**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| John Woody,<br><br>                                        **Petitioner,**<br><br>        **-against-**<br><br>**Superintendent of Green Haven Correctional Facility,**<br><br>                                        **Respondent.** | **1:20-cv-09504 (ALC) (SDA)**<br><br>**REPORT AND RECOMMENDATION** |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE ANDREW L. CARTER, JR., UNITED STATES DISTRICT JUDGE:**

**INTRODUCTION**

*Pro se* Petitioner John Woody ("Woody" or "Petitioner"), currently incarcerated in the Greenhaven Correctional Facility in New York State, seeks a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) On December 13, 2014, a judgment of conviction was entered following Petitioner's guilty plea to first-degree burglary, first-degree assault, aggravated criminal contempt, endangering the welfare of a child (three counts), third-degree intimidating a victim or witness and first-degree criminal contempt. (Resp.'s Ans., ECF No. 11, ¶ 2; Woody First Dept. Br., State Record ("SR"), ECF No. 11-2, at SR 042.) Petitioner was sentenced, as a second felony offender, to an aggregate determinate prison term of 20 years plus 5 years' post-release supervision for the first seven offenses and to a consecutive indeterminate prison term of 1½-to-3 years for the eighth offense. (*Id*.)

Woody raises three claims in his Petition: (1) that his attorneys were ineffective because they failed to interview the victim (Ground One); (2) that he has had a mental illness since childhood for which he has taken medication (Ground Two); and (3) his sentence was excessive (Ground Three). (*See* Pet. at PDF pp. 5, 7-8.)

For the reasons set forth below, it is respectfully recommended that the Petition be DENIED.

## BACKGROUND

### I.    Relevant Factual Background

On June 14, 2013, Woody threatened to kill his wife, Patricia Allen-Woody. (*See* Resp.'s Opp. Mem., ECF No. 10, at 1; Woody First Dept. Br. at SR 043.) Three weeks later, on July 8, 2013, Woody appeared at his wife's Manhattan apartment building and repeatedly stabbed her in front of their three children. (*See id*.) In August 2014, following his arrest and indictment on charges stemming from the 2013 offenses, Woody sent his wife a threatening message through a third party. (*See* Resp.'s Opp. Mem. at 1; Woody First Dept. Br. at SR 044.) He was charged by Information with first degree criminal contempt for the threat, which violated an existing order of protection. (*See id*.)

### II.    Procedural History

#### A.    Indictment, Guilty Plea And Sentencing

A New York County grand jury returned a 38-count indictment, which was filed on July 15, 2013, charging Woody with crimes against his wife committed on June 14 and July 8, 2013, as well as for other crimes Woody committed against his wife beginning in March 2013. (Indictment, SR 106-23; Woody First Dept. Br. at SR 062.) On September 10, 2014, Woody appeared for a

2

hearing before New York County Supreme Court Justice Maxwell Wiley. (9/10/14 Tr., SR 001, 004.) At the hearing, the prosecution stated that it was withdrawing a prior plea offer made to cover the Indictment charges because, in August 2014, after the Indictment was filed, Woody threatened his wife. (*See id*. at SR 2.) The prosecution stated that it would agree to the original offer (which was a determinate prison term of 20 years and 5 years' post-release supervision), plus a consecutive 1½-to-3-year term for the August 7, 2014 offense. (*See id*. at SR 002-03.) Woody agreed to accept the revised plea offer. (*See id*. at SR 004-05.) Because the prosecution had not yet prepared the charging document for the contempt charge, the parties agreed that Woody would plead guilty to the Indictment charges that day and return to plead guilty to the new contempt charge on a subsequent date. (*See id*. at SR 005-09.) Woody then admitted his guilt on the record. (*See id*. at SR 007-019.)

On October 10, 2014, Woody again appeared before Justice Wiley. (*See* 10/10/14 Tr., SR 023-24.) Woody waived prosecution by Indictment and pleaded guilty under an Information to criminal contempt in the first degree. (*See id*. at SR 024-31; *see also* Information, SR 140.) On December 3, 2014, Justice Wiley sentenced Woody to an aggregate determinate prison term of 20 years plus 5 years' post-release supervision and to a consecutive indeterminate prison term of 1½-to-3 years. (12/3/14 Tr., SR 034-37.)

**B.    Direct Appeal**

In January 2018, Woody, through assigned counsel from the Center for Appellate Litigation, filed his brief in support of his direct appeal to the Appellate Division, First Department, arguing that his sentence was excessive. (*See* Woody First Dept. Br. at SR 056-74.) On February 27, 2018, the First Department unanimously affirmed Woody's sentence, finding it not excessive.

*See People v. Woody*, 158 A.D.3d 594 (1st Dep't 2018). On April 17, 2018, the New York Court of Appeals denied Woody's application for leave to appeal. *See People v. Woody*, 31 N.Y.3d 1018 (2018)

### C.     Post-Judgment Motions

Woody has filed four post-judgment motions to vacate his conviction or set aside his sentence. In the first motion, dated August 16, 2018, which was made under CPL § 440.10, Woody asserted that due to a "mental disease or defect[, he] was incapable of understanding" the proceedings that led to his conviction and that he pled guilty "under duress" and due to pressure by his attorney. (Woody 8/16/18 Aff., SR 080-81.) Woody stated the following in support of his motion: (1) the victim's medical records did not "show any vital signs punctured"; and (2) Woody had entered the victim's building with no intent to harm the victim, but only to talk to his children. (*See id*. at SR 081.) By Decision and Order, dated November 28, 2018, Justice Wiley denied Woody's motion, concluding that Woody's "self-serving assertion [that his plea was coerced] made several years after his sentence [was] belied by the record" of the plea proceeding, in which Woody "was asked if anyone forced or coerced him into pleading guilty . . . [and Woody] told the Court that no one had." (11/28/18 Decision & Order, SR 085.)

On July 22, 2019, Woody filed a second § 440.10 motion, seeking to vacate his conviction or a modification of his sentence because: (1) he pled guilty "under duress" and based on a "misrepresentation[;]" and (2) he was mentally ill when he pled guilty. (Woody 7/22/19 Aff., SR 086-87.) Petitioner asserted that, he had asked one of his attorneys "to investigate" the victim but the attorney said that she was pregnant, which "stagnated [the] investigation" of his case. (*See id*. at SR 087.) By Decision and Order, dated January 15, 2020, Justice Wiley denied Woody's

4

motion, stating that Woody had provided no facts to support his claims and that the record of the plea belied any claim that Woody's plea was coerced. (1/15/20 Decision & Order, SR 094-95.)

On March 3, 2021, the District Attorney's Office served Woody with notice of entry of the 2018 and 2020 decisions. (3/3/21 Not. of Entry, SR 096-99.) Woody did not seek leave to appeal either decision. (*See* Resp.'s 2/3/26 Ltr. ECF No. 19.)

On February 20, 2024, after the habeas petition in this action was filed, Woody filed a motion under CPL § 440.20, seeking to set aside his sentence because his counsel was ineffective by failing to "investigate" the victim and failing to speak with family and friends. (Woody 2/20/24 Aff., ECF No. 19, at PDF p. 6.) By Decision and Order, dated May 15, 2024, Justice Wiley denied Woody's motion. (5/15/24 Decision & Order, ECF No. 19, at PDF pp. 10-11.) Justice Wiley noted that, under CPL § 440.20, "a court may set aside that sentence only upon the ground that it was unauthorized, illegally imposed, or otherwise invalid as a matter of law." (*See id*. at PDF p. 10.) Justice Wiley found that Woody had "failed to establish . . . that the sentences imposed were unauthorized, illegally imposed, or otherwise invalid as a matter of law." (*Id*.) In addition, Justice Wiley noted that Woody had "made similar CPL 440.10 motions in 2018 and 2019" that he denied. (*Id*.) On August 29, 2024, the Appellate Division denied Woody's motion to appeal the denial of his CPL § 440.20 motion. (8/29/24 Cert. Denying Leave, ECF No. 19, at PDF p. 24.)

On February 9, 2026, Woody appears to have filed another motion under CPL § 440.20, seeking a reduction in his sentence. (*See* Pl.'s 2/19/26 Ltr., ECF No. 21, at PDF pp. 2-9.) Petitioner argues that there should have been a mental health evaluation before his guilty plea; he informed his lawyers he was under duress; and there should have been further investigation into his incident but that he accepts responsibility and accountability and asks for a reduction in his

sentence. (*Id.* at PDF pp. 5-8.) As of the date of this Report and Recommendation, the state court has not yet ruled on Petitioner's this latest § 440.20 motion.

### D.    Habeas Petition

On November 10, 2020, Woody filed the Petition in this action. (*See* Pet.) On April 19, 2021, Respondent filed a memorandum of law and response to the Petition. (Resp.'s Opp. Mem.; Resp.'s Ans.) On January 12, 2026, this action was referred to the undersigned for a Report and Recommendation. (Order of Ref., ECF No. 15.)

### LEGAL STANDARDS

### I.    AEDPA Generally

Under 28 U.S.C. § 2254(a), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to a state court judgment only may prevail on an application for a writ of habeas corpus on the ground that his or her custody violates "the constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner must show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When applying these standards, the court reviews the state court's "last reasoned decision." *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

For the purposes of federal habeas review, "clearly established Federal law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if it: (1) is contrary

to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13. The state court decision must be "more than incorrect or erroneous;" it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The AEDPA "dictates a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal quotation marks and citations omitted).

## II.      Exhaustion Requirement And Consideration Of Unexhausted Claims

"[B]efore a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (citing 28 U.S.C. § 2254(b)(1)(A)). The exhaustion requirement is animated by "notions of comity between the federal and [s]tate judicial systems." *Strogov v. Attorney Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

The exhaustion requirement has two components. *See Parrish v. Lee*, No. 10-CV-08708 (KMK), 2015 WL 7302762, at *6 (S.D.N.Y. Nov. 18, 2015). First, a court considers whether the petitioner "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.'" *Id*. (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)). "Exhaustion of state remedies requires that petitioners fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (cleaned up); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000). "While a state petitioner is not required

to cite 'chapter and verse of the Constitution' to satisfy this requirement, he must present his challenge "in terms that are likely to alert the state courts to the claim's federal nature." *Scott v. James*, No. 20-CV-07809 (ALC), 2023 WL 5048237, at *2 (S.D.N.Y. Aug. 8, 2023) (quoting *Carvajal*, 633 F.3d at 104). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982)). A petitioner's federal habeas claim, in other words, must be the "substantial equivalent" of the claim presented in state court. *Strogov*, 191 F.3d at 191 (2d Cir. 1999) (quoting *Picard,* 404 U.S. at 278). "'Second, having presented [the] federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.'" *Parrish*, 2015 WL 7302762, at *7 (quoting *Klein*, 667 F.2d at 282).

"[A] district court faced with a habeas petition containing unexhausted claims generally has three options." *Sims v. Gonyea*, No. 15-CV-06621 (MAT), 2018 WL 1876905, at *8 (W.D.N.Y. Apr. 19, 2018) (quoting *Ortiz v. Heath*, No. 10–CV–01492 (KAM), 2011 WL 1331509, at *14 (E.D.N.Y. Apr. 6, 2011). "The Court may (1) dismiss the unexhausted claims without prejudice, (2) under limited circumstances, stay the petition and hold it in abeyance while the petitioner returns to state court and exhausts the claims at issue, or (3) if the unexhausted claim is plainly meritless, deny it on the merits [pursuant to 28 U.S.C. § 2254(b)(2)]." *Id.*

"The AEDPA 'does not articulate a standard for denying a petition pursuant to Section 2254(b)(2), and neither the Supreme Court nor the Second Circuit has established one.'" *Spencer v. Rockwood*, No. 22-CV-00239 (GTS), 2024 WL 3398390, at *9 (N.D.N.Y. July 12, 2024) (quoting

*Nickels v. Conway*, No. 10-CV-00413, 2015 WL 4478970, at *18 (W.D.N.Y. July 22, 2015) (noting that "[i]n this Circuit, the various formulations for the proper standard to be used share 'the common thread of disposing of unexhausted claims that are unquestionably meritless'") (quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010)), *certificate of appealability denied* (2d Cir. Dec. 29, 2015)). "Rather, the Supreme Court has made clear that district courts can 'deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review, *see* § 2254(a).'" *Spencer*, 2024 WL 3398390, at *9 (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010)); *see also DeVault v. Griffin*, No. 16-CV-07281, 2020 WL 5209731, at *2 (S.D.N.Y., Aug. 31, 2020) ("[A] petitioner's unexhausted claims can be denied on their merits under a *de novo* standard of review." (citing 28 U.S.C. § 2254(b)(2) and *Berghuis*, 560 U.S. at 390)).

III.     **Ineffective Assistance Of Counsel**

"To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his counsel's representation 'fell below an objective standard of reasonableness,' and (2) that he suffered prejudice[.]" *Momplaisir v. Capra*, 718 F. App'x 91, 92 (2d Cir. 2018) (summary order) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). Under the first *Strickland* prong, there is a "strong presumption" that a lawyer's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* (internal quotation omitted); *see also Silva v. Keyser*, 271 F. Supp. 3d 527, 546 (S.D.N.Y. 2017) ("a defendant has the burden of proving 'that counsel's

9

representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'") (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1985)). "In considering whether counsel 'failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances,' *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (emphasis omitted), the Court looks to the totality of the record and must make 'every effort . . . to eliminate the distorting effects of hindsight.'" *Guerrero v. United States*, No. 07-CR-00248 (GHW), 2017 WL 1435743, at *6 (S.D.N.Y. Apr. 20, 2017) (quoting *Strickland*, 466 U.S. at 688-89).

Under the second *Strickland* prong, the petitioner must demonstrate that the ineffective assistance prejudiced the defense, which means showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

As the Supreme Court has explained, the "pivotal question" of whether the state court's application of the *Strickland* standard was unreasonable is "different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). In order to show that the state court's application of *Strickland* was unreasonable, a petitioner "must do more than convince a federal habeas court that, in its independent judgment, the state court applied *Strickland* incorrectly. Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Lopez v. Rivera*, 157 F. App'x 358, 359 (2d Cir. 2005) (cleaned up); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015) ("The standards created by *Strickland* and § 2254(d) are both highly

10

deferential, and when the two apply in tandem, review is doubly so.") (internal citations omitted).

"On habeas review, a federal court may reverse a state court ruling only where it was so lacking

in justification that there was no possibility for fairminded disagreement." *Fischer*, 780 F.3d at

562 (cleaned up).

IV.     *Pro Se* **Status**

Submissions by *pro se* litigants are to be examined with "special solicitude," *Tracy v.*

*Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that

they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent

standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)

(cleaned up); *see Lithgow v. Keyser*, No. 20-CV-03655 (VEC) (RWL), 2021 WL 4200722, at \*2

(S.D.N.Y. Aug. 16, 2021) (construing habeas petition liberally in light of special solicitude due to

*pro se* litigants), *report and recommendation adopted*, 2021 WL 4391122 (S.D.N.Y. Sept. 24,

2021).

**DISCUSSION**

The Court considers the three grounds of the Petition below. The Court first considers

Ground Two, which implicates the validity of Petitioner's guilty plea, and then turns to the

remaining two grounds.

I.      **Petitioner's Claim Regarding His Purported Mental Illness (Ground Two) Should Be**
        **Denied**

In Ground Two, Petitioner asserts that he has had a mental illness since childhood for

which he has taken medication and "made a poor decision." (*See* Pet. at PDF p. 7.) As Respondent

points out, it is unclear if Petitioner contends that he made a poor decision in terms of his conduct

underlying the charged offenses or if he is referring to his decision to plead guilty. (*See* Resp. Opp.

11

Mem. at 9.) Based on Petitioner's post-conviction filings in state court and construing the Petition to raise the strongest arguments it suggests, the Court construes Ground Two as asserting a claim that Petitioner's guilty plea was involuntary due to mental illness.[1]

Petitioner raised his mental health-related claim in his two § 440.10 motions in state court.[2] In his August 2018 § 440.10 motion, Petitioner argued in part that "by reason of mental disease or defect [that he] was incapable of understanding" the proceedings resulting in judgment. (Woody 8/16/18 Aff. at SR 080.) In denying that motion, Justice Wiley found that Petitioner "ha[d] failed to set forth any factual basis in support of his claim." (11/28/18 Decision & Order at SR 085.) Then, in his July 2019 § 440.10 motion, Woody argues in part the "existence [of] mental disease." (Woody 7/22/19 Aff. at SR 086.) In denying the latter motion, Justice Wiley again found that Petitioner "ha[d] failed to set forth any factual basis in support of his claim." (1/15/20 Decision & Order at SR 094.) However, Petitioner did not exhaust his state court remedies because he failed to seek leave to appeal the denial of his § 440.10 motions to the Appellate Division, thereby rendering habeas review unavailable to Petitioner on Ground Two. *See Head*, 2025 WL 2532814, at *13 (petitioner required to seek discretionary leave to appeal denial of § 440.10/440.20 motions to exhaust claims raised therein). Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure

---

[1] To the extent Petitioner challenges his conviction only on the ground that he suffered from mental illness and was on medication at the time of the charged offenses without challenging the voluntariness of his plea, such claim is precluded by his guilty plea. *See Head v. Auburn Corr. Facility*, No. 24-CV-06497 (EAW), 2025 WL 2532814, at *16 (W.D.N.Y. Sept. 3, 2025) (claim that petitioner was denied right to present "mental health defense" foreclosed by voluntary guilty plea).

[2] Petitioner also appears to have raised the same or similar claim in his recent § 440.20 motion, which has not yet been decided by the state court. To the extent it raises the same claim, nothing in that motion changes the Court's recommendation to deny Petitioner's mental health-related claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). This is an appropriate case to deny Petitioner's unexhausted mental health-related claim, pursuant to 28 U.S.C. § 2254(b)(2), since it is meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (dismissal appropriate where "unexhausted claims are plainly meritless").

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences.") (cleaned up). "A plea is considered intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way, and it is considered voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Walden v. Walcott*, No. 19-CV-11409 (GBD) (SN), 2025 WL 2146056, at *8 (S.D.N.Y. Feb. 5, 2025) (internal quotation marks omitted) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)), *report and recommendation adopted*, 2025 WL 2145652 (S.D.N.Y. July 29, 2025)).

For a plea to be voluntary, a defendant must be competent to proceed. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004). The federal standard for determining competency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396

13

(quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). "It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986). The same is true with respect to a defendant's competency to plead guilty. *See Sanchez v. Colvin*, No. 15-CV-09957 (PKC) (AJP), 2016 WL 5930150, at *13 (S.D.N.Y. Oct. 7, 2016), *report and recommendation adopted*, 2017 WL 1383790 (S.D.N.Y. Apr. 14, 2017) (citing *United States v. Bent*, 654 F. App'x 11, 12 (2d Cir. 2016)); *see also King v. Cunningham*, 442 F. Supp. 2d 171, 185 (S.D.N.Y. 2006) ("The standard for competency to plead guilty is no higher than the standard for competency to stand trial.") (citing *Godinez*, 509 U.S. at 398). "The mental illness must deprive the defendant of the ability to consult with his lawyer with a reasonable degree of rational understanding and to understand the proceedings against him rationally as well as factually." *United States v. Ioulevitch*, 508 F. App'x 73, 75 (2d Cir. 2013) (citation omitted).

In the present case, there is insufficient evidence in the record before the state court judge to suggest that Petitioner may not have been competent at the times that he entered his guilty pleas. Petitioner attached to his Petition a single medical record from October 2009, stating a diagnosis of "Schizo-affective Disorder, Chronic." (*See* Harlem Hosp. Visit Note, ECF No. 1 at PDF p. 16.) This record does not appear to have been before Justice Wiley at the time Petitioner's guilty pleas were entered. *See Sanchez*, 2016 WL 5930150, at *13 ("For habeas review purposes, the pertinent medical evidence is that which was before the trial judge during the proceeding at issue."). In any event, Petitioner's diagnosis does not itself establish Petitioner's incompetence. *See Sanchez*, 2016 WL 5930150, at *13 ("The fact that [defendant] was diagnosed with paranoid schizophrenia, among other conditions, does not itself establish his incompetence to understand

14

the plea proceedings."). Nor was Justice Wiley required to specifically inquire into Petitioner's history of mental illness or medication regimen. *See Royster v. Perez*, No. 08-CV-13, 2009 WL 1505278, *4 (E.D.N.Y. May 28, 2009) ("[T]he Supreme Court has not held that a state court must specifically inquire into a defendant's history of mental illness or medication regimen . . . [and] the state court's factual determination that the petitioner's plea was voluntary is presumed to be correct absent clear and convincing to the contrary").

Petitioner's assertion in his Petition that he was taking medication for his mental illness, and that he "made a poor decision" (*see* Pet. at PDF p. 7) does not help him. Petitioner does allege that he was taking medication on the days that he pled guilty. Even if he did, there is nothing to suggest that Petitioner was behaving in an irrational manner or that he lacked a rational and factual understanding of the proceedings. *See Head*, 2025 WL 2532814, at *21 (dismissing as meritless claim that mental health issue impacted guilty plea when petitioner had "not established that his mental health diagnoses, prescription medication, and substance abuse issues had any effect on his ability to waive his rights and plead guilty knowingly, voluntarily, and intelligently").

The transcript of the September 10, 2014 plea hearing reflects that Petitioner was aware of the situation facing him, and of the choice he had to make, and that he acted rationally and knowingly when he pled guilty:

> [ASSISTANT DISTRICT ATTORNEY]: The defendant can take advantage of this offer right now [*i.e.*, 20 years plus 5 years' post-release supervision and a consecutive term of 1½-to-3 years] or it will not be made again.
>
> THE DEFENDANT: Your Honor, it's like, the situation right here is very serious and I do love my family. I love my children. I made a bad decision out of anger which I got to take responsibility for and she has came to visit me with my children while I been in prison and this whole situation is just sad but I'm sorry.

15

I have been remorseful but most important is my children. I got a chance to apologize to them and it's just sad. What do you do as a parent, just abandon your kids? It just hurts. And I apologize.

THE COURT: Well, I agree, it's a sad situation. It is. And if I thought the DA was being unreasonable I would try to do something about it but I don't think he is being unreasonable.

But you do understand if you plead guilty to everything the best I could do for you would be a life sentence. So, if the offer is of any lesser charge, it is pretty much in the hands of the DA and I can understand what you'\'re saying but I can understand their position as w[e]ll.

So, pretty much the choice is – it's a tough choice, go to trial and risk losing a life sentence, or take this plea offer which also involves a lot of time

That's pretty much the position.

THE DEFENDANT: Well, I am not going to put Patricia through any more or any children through any more and whatever is on the table I accept.

. . .

[M]y first question is, is that what you want to do, plead guilty to those charges?

THE DEFENDANT: That['s] what I have to do.

THE COURT: Pardon me?

THE DEFENDANT: That's what I have to do.

THE COURT: You feel you have to do it? You have to say yes or no so we can hear. You feel you have to?

THE DEFENDANT: Yes, sir.

THE COURT: Let me ask you this. Is anybody threatening you, forcing you in any way to plead guilty?

THE DEFENDANT: No.

THE COURT: So when you said, "you feel you have to", in other words, the situation that you feel compels you to do, is that fair to say?

THE DEFENDANT: I have no wins. I don't want to drag this on anymore, put my kids through it, I don't want to do that.

THE COURT: Have you talked about this with your lawyers?

THE DEFENDANT: Both lawyers.

THE COURT: Have you understood what they told you?

THE DEFENDANT: Yeah, I understand.

THE COURT: All right.

(9/10/14 Tr. at SR 003-05; SR 011-12.)[3]

Here, as in *Ross v. Superintendent*, No. 10-CV-00147 (PKC), 2013 WL 2128808 (E.D.N.Y. May 15, 2013), Petitioner's "participation at the plea proceedings and his consultation with counsel demonstrate that he understood the nature and purpose of the plea proceeding and was both able to consult with his counsel and assist in preparing his defense." *Id*. at *7. Petitioner's statements made during his plea allocution are entitled to the "strong presumption of verity," and the Court "may rely on [his] sworn statements and hold him to them." *See Munck v. Amoia*, No. 16-CV-00118 (GLS), 2016 WL 4275737, at *5 (N.D.N.Y. Aug. 12, 2016) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also Head*, 2025 WL 2532814, at *18 ("A strong presumption of accuracy attaches to a defendant's sworn statements, made in open court that he understood the consequences of his plea.") (cleaned up).

There also is nothing in the record to indicate that counsel had any concerns that Petitioner was unable to understand the plea and its consequences. *See Munck*, 2016 WL 4275737, at *6 (quoting *Vamos*, 797 F.2d at 1150 ("Counsel's silence 'provides substantial evidence of [petitioner's] competence.'"). Since Petitioner's present assertion that his guilty plea

---

[3] Petitioner displayed the same rationality when he pled guilty on October 10, 2014 to Criminal Contempt in the First Degree, noting that he had talked about the plea with his lawyers and understood what the lawyers had told him. (10/10/14 Tr. at SR 025-26.)

was not knowing and voluntary is "wholly contradicted by the record[,]" it is insufficient to entitle him to relief. *See Horton v. Bell*, No. 21-CV-00262 (MAD) (MJK), 2024 WL 1341091, at \*1 (N.D.N.Y. Mar. 29, 2024). Accordingly, it is recommended that Petitioner's claim regarding his mental illness (Ground Two) be denied.

## II.    Petitioner's Claim Regarding Ineffective Assistance of Counsel (Ground One) Should Be Denied

In Ground One, Petitioner asserts that his attorneys were ineffective because they failed to interview the victim. (*See* Pet. at PDF p. 5.) Respondent contends that this claim is unexhausted[4] but should be denied because it is foreclosed by Petitioner's guilty plea and is meritless. (Resp. Opp. Mem. at 16.)

### A.    Ground One Is Foreclosed By Petitioner's Guilty Plea

As an initial matter, the Court finds that Ground One is foreclosed by Petitioner's guilty plea, which as set forth above, the Court finds was knowing and voluntary. In *Tollett v. Henderson*, the Supreme Court reversed a grant of habeas relief, holding:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "The focus of a federal habeas inquiry in a case involving a guilty plea is the voluntariness of the plea, not the existence . . . of an antecedent constitutional infirmity." *Best v. Griffin*, No. 15-CV-04073 (CM) (AJP), 2015 WL 6875016, at \*14 (S.D.N.Y. Nov. 6, 2015) (cleaned up), *report and recommendation adopted*, 2016 WL 4030894

---

[4] Respondent's opposition memorandum was filed prior to Petitioner filing either of his two § 440.20 motions and, therefore, does not address exhaustion of the claims raised in the first § 440.20 motion.

(S.D.N.Y. July 26, 2016), *aff'd*, 695 F. App'x 18 (2d Cir. 2017)*; see also Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea."); *Hayes v. Lee*, No. 11-CV-01365 (KMK) (PED), 2015 WL 5943677, at *8 (S.D.N.Y. Oct. 13, 2015) ("Because Petitioner's plea was knowing and voluntary, Petitioner cannot assert pre-plea grounds for habeas relief."). "Consequently, an unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of the plea." *Griffin*, 2015 WL 6875016, at *14; *see also Hayes*, 2015 WL 5943677, at *28 (quoting *United States v. Gregg,* 463 F.3d 160, 164 (2d Cir. 2006) ("[A] guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on tactual guilt a non-issue[.]")).

In the present case, Petitioner's claim that his counsel was ineffective for failing to interview the victim preceded his guilty plea and does not relate to the voluntariness of his plea. Thus, Ground One is foreclosed by Petitioner's guilty plea. *See Sims*, 2018 WL 1876905, at *7 (claim that counsel failed to properly pursue certain avenues of investigation barred by voluntary guilty plea) (citing cases).

**B.     Ground One Lacks Merit**

Petitioner indicates that he raised an ineffective assistance claim on direct appeal (Pet. at PDF p. 6), but as discussed below, the only issue raised on direct appeal was whether Petitioner's sentence was excessive. (*See* SR 049-52.) Respondent asserts that, in Petitioner's second § 440.10 motion, he cited the alleged failure to investigate as a supporting fact for his claim but did not

19

raise it as a separate ground for relief. (*See* Resp. Opp. Mem. at 16.) In denying Petitioner's second § 440.10 motion, Justice Wiley recognized Petitioner's claim "that counsel did not timely investigate the complainant as requested by [Petitioner] due to counsel's pregnancy" but found that Petitioner "failed to set forth any factual basis in support of his claim." (1/15/20 Decision & Order at SR 094.) In any event, Petitioner did not seek leave to appeal the denial of his second § 440.10 motion. (*See* Resp. Opp. Mem. at 17.)

Later, in February 2024, Petitioner filed a § 440.20 motion arguing in part that he had an "ineffective counselor" and that he had "been asking [his] lawyer to this day to investigate the [victim]." (Woody 2/20/24 Aff., ECF No. 19 at PDF p. 6.) Justice Wiley denied this motion, stating that a court may set aside a sentence under § 440.20 "only upon the ground that it was unauthorized, illegally imposed, or otherwise invalid as a matter of law" and Woody "ha[d] failed to establish, [and Justice Wiley did not] see any basis for[,] a[] finding that the sentences imposed were unauthorized, illegally imposed, or otherwise invalid as a matter of law." (5/15/24 Decision & Order, ECF No. 19 at PDF pp. 10-11.) The Appellate Division denied leave to appeal from the May 15, 2024 Decision and Order. (*See* 8/29/24 Cert. Denying Leave.)

To the extent Petitioner exhausted his ineffective assistance claim through his first § 440.20 motion and appeal, he has not demonstrated the state court's denial of his claim was an unreasonable application of *Strickland*. For example, to demonstrate prejudice he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *accord Chhabra v. United States*, 720 F.3d 395, 407 (2d Cir. 2013). Petitioner does not assert that he would have insisted on going to trial if not for the alleged failure of counsel to interview the victim. Even so,

"conclusory allegations that a defendant would have insisted on proceeding to trial are generally insufficient to establish actual prejudice under *Strickland*[.]" *Crummell v. Fischer*, No. 12-CV-00620 (AMD), 2017 WL 2061383, at *4 (E.D.N.Y. May 11, 2017) (citing *Scott v. Superintendent, Mid-Orange Corr. Facility*, No. 03-CV-06383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006)). Notably, the record reflects that the victim, if truthful, would not have been helpful to Petitioner's case and that the victim was "on board" to testify against Petitioner. (*See* 9/10/14 Tr. at SR 003.) The overwhelming evidence of Petitioner's guilt, in addition to statements he made that he that he was pleading guilty because he did not "want to drag this on anymore" and put his children through any more trauma (*id*. at SR 011) indicate that there is no reasonable probability that, but for Petitioner's counsel's failure to interview the victim, Petitioner would have chosen to go to trial with the risk of facing life imprisonment. Accordingly, it is recommended that Petitioner's claim set forth in Ground One be denied.

### III.    Petitioner's Claim Regarding Length Of His Sentence (Ground Three) Should Be Denied

In Ground Three, Petitioner asks the Court to modify his sentence because it is excessive. (*See* Pet. at PDF p. 8.) Respondent maintains that this claim should be rejected because it is not cognizable on habeas review. (Resp.'s Opp. Mem. at 22.)

To the extent Petitioner's claim is grounded in state law, it is not cognizable on federal habeas review. On direct appeal, Petitioner, then represented by counsel, raised the state law claim that the Appellate Division should exercise its discretionary power under CPL § 470.15 to reduce his sentence in the interest of justice. (*See* SR 049-52; Resp.'s Opp. Mem. at 22.) Petitioner's brief to the Appellate Division did not mention the Eighth Amendment or refer to federal law. (SR 049-52.) The Appellate Division found "the sentence not excessive." *Woody*, 158

A.D.3d at 68. Petitioner sought permission to appeal the "sole issue raised in the appeal" of "whether the sentence was excessive and should be reduced in the interest of justice" (SR 077), which was denied by the Court of Appeals. (SR 079.) Similarly, in his Petition, Petitioner does not mention the Eighth Amendment or cite any federal law, arguing only that the Court should modify his sentence because it was excessive. (Pet. at PDF p. 8.) Federal habeas review is not available to address alleged errors of state law. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or laws or treaties of the United States"). Thus, Petitioner's claim to modify his sentence should be dismissed as non-cognizable. *See Diaz v. People*, No. 23-CV-03800 (KPF) (RWL), 2025 WL 3096497, at *28 (S.D.N.Y. Oct. 30, 2025) ("[T]o the extent [the petitioner's] challenge to the length of his sentence is based on state law principles, it . . . is not cognizable on habeas review."); *Bonie v. Annucci*, No. 19-CV-11822 (AJN) (DF), 2021 WL 8263467, at *12 (S.D.N.Y. Nov. 18, 2021) ("To the extent Petitioner's claim is grounded in state law, it cannot be considered on federal habeas review."), *report and recommendation adopted*, 2022 WL 1266014 (S.D.N.Y. Apr. 28, 2022); *Bell v. Ercole*, 631 F. Supp. 2d 406, 418 (S.D.N.Y. 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")).

To the extent Petitioner now seeks to assert a federal claim under the Eighth Amendment,[5] it is unexhausted because the constitutional dimension of the claim was not fairly

---

[5] The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "[A] punishment may be 'cruel and unusual' if it is 'disproportionate to the crime.'" *Triplett v. Reardon*, No. 20-CV-01064 (RA) (SLC), 2023 WL 3045737, at *23 (S.D.N.Y. Mar. 31, 2023) (quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010)), *report and recommendation adopted*, 2023 WL 7103221 (S.D.N.Y. Oct. 27, 2023). Thus, "constitutional

presented to the state courts on direct appeal. *See Scott*, 2023 WL 5048237, at *6 (petitioner did not exhaust sentencing claim when only asked Appellate Division to exercise discretion to sentence in the interest of justice) (citing cases); *see also Valdez v. Stewart*, No. 17-CV-04121 (KPF) (SLC), 2021 WL 634716, at *19 (S.D.N.Y. Feb. 17, 2021); *Taylor v. Brown*, No. 08-CV-08403 (ALC) (RLE), 2012 WL 607621, at *3 (S.D.N.Y. Feb. 24, 2012). The Court need not decide whether Petitioner still could exhaust this claim[6] because any such claim is meritless. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

"[I]n the absence of a challenge to the relevant statute itself, a federal excessive-sentence claim may only be maintained if the sentence imposed fails to comply with state law." *Bonie,* 2021 WL 8263467, at *13. "[T]he term of a sentence is not a violation of the Eighth Amendment if the sentence falls within the applicable statutory range." *Lanier v. Capra*, No. 21-CV-09307 (AJN) (JLC), 2022 WL 1024666, at *5 (S.D.N.Y. Apr. 5, 2022), *report and recommendation adopted*, No. 21-CV-09307 (ALC), 2023 WL 6795441 (S.D.N.Y. Oct. 13, 2023) (citing *White v. Keane*, 969

---

proportionality . . . 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *United States v. Reingold*, 731 F.3d 204, 211 (2d Cir. 2013) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991)).

[6] *See People v. Pena*, 28 N.Y.3d 727, 730 (N.Y. 2017) (affirming dismissal of claim that sentence was unconstitutionally excessive under the Eighth Amendment as unpreserved when constitutional argument not raised before sentencing court); *Pena v. Bell*, No. 18-CV-04849 (ALC), 2021 WL 517778, at *6 (S.D.N.Y. Feb. 11, 2021) (Eighth Amendment claim procedurally defaulted based upon contemporaneous objection rule); *but see Rivera v. Kaplan*, No. 17-CV-02257 (RA) (SN), 2020 WL 5550047, at *24 (S.D.N.Y. July 20, 2020) (finding Eight Amendment claim was unexhausted but not defaulted because petitioner still could raise Eighth Amendment claim in § 440.20 motion), *report and recommendation adopted*, 2022 WL 3572880 (S.D.N.Y. Aug. 19, 2022). Petitioner did not raise an Eighth Amendment claim in either of his § 440.20 motions.

F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.")); *see also Valdez*, 2021 WL 634716, at *19; *Jones v. Brandt*, No. 09-CV-01035 (SAS), 2013 WL 5423965, at *7 (S.D.N.Y. Sept. 26, 2013) (dismissing unexhausted excessive sentence claim as meritless).

Petitioner does not challenge the validity of the relevant sentencing statute, and his sentence was within the range prescribed by state law. As acknowledged in Petitioner's state appellate brief, "[t]he authorized sentence for a second felony offender such as Mr. Woody, convicted of the Class B violent felonies of burglary in the first degree and assault in the first degree, ranges from the minimum term of eight years to the maximum term of 25 years." (Woody First Dept. Br. at SR 050.) Woody's sentence is within that range. The "individual circumstances" Petitioner presents, such as his contention that the victim did not suffer life-threatening injuries, his own health issues, "are simply not factors that [the] Court may consider for habeas relief in accordance with the Eighth Amendment." *See Santiago v. Shanley*, No. 20-CV-03530 (RPK), 2023 WL 3321665, at *4 (E.D.N.Y. May 8, 2023) (cleaned up).

Accordingly, it is recommended that Petitioner's claim regarding the length of his sentence (Ground Three) be denied.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that Woody's Petition for a Writ of Habeas Corpus be DENIED in its entirety.

24

Dated:       February 23, 2026
            New York, New York

_____

**STEWART D. AARON**
**United States Magistrate Judge**

*         *         *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Carter.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).